1  Daniel M. Benjamin (SBN 209240)
   dbenjamin@mcnamarallp.com
2  Sara J. O'Connell (SBN 238328)
   soconnell@mcnamarallp.com
3  Edward Chang (SBN 268204)
   echang@mcnamarallp.com
4  McNamara Benjamin LLP
   501 West Broadway, Suite 2020
5  San Diego, California 92101
   Telephone: 619-269-0400
6  Facsimile:  619-269-0401

7  *Attorneys for Plaintiff Thomas W. McNamara*
   *in his capacity as the Court-appointed Receiver*
8  *for PLCMGMT LLC, dba Prometheus Law*

9             UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 THOMAS W. MCNAMARA, as the Court-Appointed Receiver for PLCMGMT LLC, dba PROMETHEUS LAW, | Case No. _____ |
| 12 | **RECEIVER'S COMPLAINT FOR:** |
| 13 Plaintiff, | **(1) VIOLATION OF UNIFORM VOIDABLE TRANSACTIONS ACT (CAL. CIV. CODE § 3439);** |
| 14 v. | **(2) SALE OF UNREGISTERED SECURITIES IN VIOLATION OF 15 U.S.C. § 77e(a) and 77e(c);** |
| 15 | |
| 16 LEE SAMUEL ALLEN; PETER BAUER; | **(3) SALE OF UNQUALIFIED SECURITIES IN VIOLATION OF CAL. CORP. CODE § 25110** |
| 17 WILLIAM BAYLIN; JEFFREY BROWN; | |
| 18 ANTHONY L. CANTU; MICHAEL GIVILANCZ; | **(4) SALE OF SECURITIES BY UNREGISTERED PERSON IN VIOLATION OF CAL. CORP. CODE § 25210;** |
| 19 JONATHAN HARRIS; LORETTA KAZMAR; | |
| 20 MARC LAMPERT; GENE LANGENBERG; | **(5) SALE OF SECURITIES BY UNREGISTERED PERSON IN VIOLATION OF 15 U.S.C. § 78o;** |
| 21 ADAM LEITER; KIMBERLY LEITER; | |
| 22 MICHAEL MCNAMARA; DANIEL MOSS JR.; | **(6) QUASI-CONTRACT CLAIM FOR RESTITUTION BASED ON UNJUST ENRICHMENT; AND** |
| 23 ROXANNE ROPP; EDUARDO SOMMER; | |
| 24 DAVID TERRY; ALPHA MATRIX, a Colorado | **(7) QUASI-CONTRACT CLAIM FOR RESTITUTION AS TO MICHAEL GIVILANCZ** |
| 25 limited liability company; C.J. INVESTMENT GROUP, LLC, a | |
| 26 Colorado limited liability company; and LIFESTAGE PLANNING, INC., | Related Case: |
| 27 a Colorado corporation, | *SEC v. PLCMGMT LLC, dba Prometheus Law, et al.* |
| 28 Defendants. | U.S. District Court (C.D. Cal.), Case No. LACV16-02594-TJH (FFMx) |

COMPLAINT

Plaintiff Thomas W. McNamara, in his capacity as the Court-appointed Receiver for PLCMGMT LLC dba Prometheus Law, and its subsidiaries and affiliates (the "Receiver" or "Plaintiff"), hereby brings the following Complaint against Lee Samuel Allen, Peter Bauer, William Baylin, Jeffrey Brown, Anthony L. Cantu, Michael Givilancz, Jonathan Harris, Loretta Kazmar, Marc Lampert, Gene Langenberg, Adam Leiter, Kimberly Leiter, Michael McNamara, Daniel Moss Jr., Roxanne Ropp, Eduardo Sommer, David Terry, Alpha Matrix, C.J. Investment Group, LLC, and Lifestage Planning, Inc. (collectively "Defendants"), and alleges the following:

## I.   SUMMARY

1.   This matter is a lawsuit by Receiver to recover payments made by PLCMGMT LLC dba Prometheus Law, and its subsidiaries and affiliates ("Prometheus") to Defendants.   Defendants marketed and sold unregistered securities to multiple people on behalf of Prometheus, and in return received payments from Prometheus in the form of "commissions" or "referral fees."  These payments to Defendants were paid from monies contributed to Prometheus by the investors whom Defendants had introduced to Prometheus and by other Prometheus investors.

2.   On behalf of Prometheus, the Receiver now seeks the relief requested herein, including, *inter alia*, ordering each Defendant to pay to the Receiver an amount equaling the total of the payments made to that Defendant by Prometheus, pursuant to California's voidable transactions statute, Cal. Civ. Code § 3439 and pursuant to other theories of relief described herein.

## II.   PARTIES

3.   Prometheus is a California corporation, incorporated on December 7, 2013, and headquartered in Los Angeles, California.   Prior to April 26, 2016, Prometheus was controlled by James A. Catipay ("Catipay") and David A. Aldrich ("Aldrich").

COMPLAINT

4.     On April 26, 2016, in *Securities and Exchange Commission v. PLCMGMT LLC, dba Prometheus Law, et al.*, Case No. LACV16-02594-TJH (FFMx) (C.D. Cal.) ("*SEC v. PLCMGMT*"), Judge Terry Hatter entered an order appointing Thomas W. McNamara as a permanent Receiver ("Receiver") for Prometheus and its subsidiaries and affiliates, and vested him with the full powers of an equity receiver, among other things.  A true and correct copy of the Preliminary Injunction, Order Appointing Permanent Receiver and Freezing Assets, and Related Orders Against Defendants PLCMGMT LLC, dba Prometheus Law, James A. Catipay is attached hereto as Exhibit 1.

5.     Each Defendant was employed by Prometheus to sell, and did sell, Prometheus's securities, and each Defendant received a substantial commission payment for each sale, as is further described herein.

6.     On information and belief, each Defendant's domicile during the time of the claims alleged, and current domicile, is as follows:

    a.     Defendant Lee Samuel Allen ("Allen") is domiciled in Sunnyvale, California.

    b.     Defendant Peter Bauer ("Bauer") is domiciled in Centennial, Colorado.

    c.     Defendant Alpha Matrix is Bauer's limited liability company formed in Colorado.

    d.     Defendant William Baylin ("Baylin") was domiciled in La Mesa, California up through early 2015, then became domiciled in Santee, California.

    e.     Defendant Jeffrey Brown ("Brown") was domiciled in Richardson, Texas, and is now domiciled in Phoenix, Arizona.

    f.     Defendant Anthony L. Cantu ("Cantu") is domiciled in Weslaco, Texas.

    g.     Michael Givilancz ("Givilancz") is domiciled in Weslaco, Texas.

///

COMPLAINT

h.      Defendant Jonathan Harris ("Harris") is domiciled in Lakewood, Colorado.

i.      Defendant C.J. Investment Group, LLC ("C.J. Investment Group") is Harris' limited liability company formed in Colorado.

j.      Defendant Loretta Kazmar ("Kazmar") is domiciled in Huntington Beach, California.

k.      Defendant Marc Lampert ("Lampert") was domiciled in Carlsbad, California, then became domiciled in San Diego, California.

l.      Gene Langenberg ("Langenberg") is domiciled in Corona, California.

m.      Adam Leiter ("A. Leiter") is domiciled in Laguna Beach, California.

n.      Kimberly Leiter ("K. Leiter") is domiciled in Laguna Beach, California.

o.      Michael McNamara ("M. McNamara") was domiciled in Denver, Colorado, then became domiciled in Scottsdale, Arizona.

p.      Daniel Moss Jr. ("Moss") is domiciled in Atlanta, Georgia.

q.      Defendant Roxanne Ropp ("Ropp") is domiciled in Humble, Texas.

r.      Defendant Eduardo Sommer ("Sommer") is domiciled in Lawrenceville, Georgia.

s.      Defendant David Terry ("Terry") is domiciled in Littleton, Colorado.

t.      Defendant Lifestage Planning, Inc. ("Lifestage Planning") is Terry's corporation formed in Colorado.

## III.    JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1345 over *SEC v. PLCMGMT*, which creates supplemental and ancillary jurisdiction over the

COMPLAINT

Receiver's claims in this action.  *See Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008) ("The federal securities laws create exclusive federal jurisdiction over 'all suits in equity and actions at law brought to enforce any liability or duty created by' federal securities laws.  15 U.S.C. §§ 77v(a), 78aa.  The federal district court properly authorized the Receiver to bring suits under state law in federal court under ancillary jurisdiction for the purpose of effectuating its decree of liability against Wallenbrock because the primary lawsuit against Wallenbrock presented a federal question.  *See* 28 U.S.C. § 1367; Fed. R. Civ. P. 66.").

8.     This Court may exercise *in personam* jurisdiction over each Defendant named herein under 28 U.S.C. § 1692, which states, "[i]n proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts."

9.     The Receiver has filed notices pursuant to 28 U.S.C. § 754 in the Federal District Court of each District in which each Defendant is believed to be domiciled (except the Central District of California, where the Court's own filing provided such notice).

10.     In the alternative and in addition, on information and belief, each Defendant is subject to personal jurisdiction because each Defendant committed offenses under 15 U.S.C. § 77 and violations of the rules and regulations promulgated by the SEC in respect thereto, pursuant to 15 U.S.C. § 77(v).

11.     In the alternative and in addition, on information and belief, each Defendant is subject to personal jurisdiction because each Defendant committed offenses under 15 U.S.C. § 78 and violations of the rules and regulations promulgated by the SEC in respect thereto, pursuant to 15 U.S.C. § 78aa.

///

///

COMPLAINT

12.     In the alternative and in addition, each Defendant is subject to personal jurisdiction because they knowingly sold and marketed Prometheus securities and otherwise did business with Prometheus in the Central District of California.

13.     Venue in the Central District of California is proper because the Court in *SEC v. PLCMGMT* retained jurisdiction of this matter for all purposes and appointed the Receiver in the Central District of California.   Additionally, this proceeding is supplemental to *SEC v. PLCMGMT* and each Defendant transacts business in the Central District of California, causing venue to be proper pursuant to 15 U.S.C. § 77v(a).  Also, a substantial part of the events or omissions giving rise to the claim occurred in the Central District of California with regards to each Defendant and a substantial part of property that is the subject of the action is situated in the Central District of California, causing venue to be proper pursuant to 28 U.S.C. § 1391(b)(2).

## IV.   FACTS

### A.   GENERAL BACKGROUND

14.     Catipay founded Prometheus and was its sole owner and managing member.  He does not hold any securities licenses and is not registered with the SEC in any capacity.

15.     Aldrich was Prometheus's president and chief marketing officer until approximately February 15, 2015.  Aldrich does not hold any securities licenses and is not registered with the SEC in any capacity.

16.     Prometheus's investment scheme focused on selling securities (euphemistically labeled as "prepaid forward plaintiff litigation contracts") to investors from December 2013 through March 2016.  The securities purportedly funded marketing intended to identify potential plaintiffs in tort actions against the manufacturers of prescription drugs and medical devices, referring those plaintiffs to attorneys who would file the tort actions and then share the proceeds of those tort actions with Catipay.

COMPLAINT

17.    Prometheus promised to pay its investors returns ranging from 100% to 300%, depending on the amount invested and the time period for the investment. These promises were made verbally and in several iterations of a written prospectus.

18.    Each Defendant offered to sell, sold or otherwise effected transactions of Prometheus securities transactions in interstate commerce and/or in California. Each Defendant received commission payments from Prometheus based on the amount of that Defendant's sales.  Upon information and belief, each Defendant distributed the written prospectus, or "information packet," to potential and actual investors through use of the mails and email.

19.    Prometheus's information packets falsely stated Prometheus would redeem investors' principal on demand "at any time and for any reason."  However, funds were not available for significant redemptions and Prometheus had denied, and would continue to deny, numerous redemption demands received from investors.   Additionally, Prometheus's information packets falsely stated that investor funds, once received by Prometheus, were "100%" secured by a legally enforceable lien.  In fact, investor funds were not secured and the lien documents that Prometheus supplied to investors related to a bank account that held only nominal or no assets.  Also, the marketing materials falsely stated that that the tort plaintiffs that Prometheus identified through its legal marketing would, upon filing their claims, be entitled immediately to funds from legal actions that had already been settled and for which settlement funds had been placed on escrow.  In fact, only approximately 1% of the tort plaintiffs' legal actions had been settled, and an overwhelming majority of the legal actions had yet to be litigated or successfully negotiated for settlement.

20.    Prometheus's securities were not registered with the United States Securities and Exchange Commission ("SEC"), and sales of the securities were not limited to accredited investors.  The securities were sold primarily through sales

///

COMPLAINT

agents who were not registered with the SEC to sell securities as brokers or dealers, and who were paid on commission.

21.     Prometheus's securities were not registered with the California Commissioner of Business Oversight ("Commissioner"), nor were the securities qualified or exempt from this requirement under any statute.  The securities were sold primarily through sales agents who had not applied for nor secured a certificate from the Commissioner to sell securities as brokers or dealers, and who had not filed the required form for designation as an exempt "finder" with the Commissioner.  The sales of the Prometheus securities were not limited to accredited investors under California law.

22.     While Catipay and Aldrich were operating Prometheus together from December 2013 until February 2015, they raised at least $8.54 million from investors in approximately 1,018 investments.  After Catipay took over the business in February 2015, he raised at least another $3.18 million from investors in approximately 313 additional investments.

23.     By October 2014, if not before, Catipay and Aldrich were aware that Prometheus's potential plaintiffs' claims were not generating recoveries sufficient to repay the promised investor returns in a timely manner.  For example, with regard to investor returns coming due in December 2014, Aldrich wrote in an October 2014 email to Catipay that, "as settlements have been pushed out our ability to pay returns from those settlements will have to be pushed out."

24.     Catipay and Aldrich did not have sufficient settlement funds to make the promised return payments to investors when the claims came due.  Instead, Catipay and Aldrich made Ponzi-type payments to early investors.  Specifically, when the first prepaid forward contracts were due in December 2014, Catipay and Aldrich paid $120,000 in returns to investors by using funds collected from more recent investors, rather than funds deriving from settlement payments.  Both Catipay and Aldrich have since each admitted under oath that these were Ponzi payments.

COMPLAINT

25.     Prometheus attempted to delay, hinder and defraud investors by discouraging redemption requests.  For example, in an email to Prometheus's investors and its sales agents on or about February 15, 2016, Catipay claimed that Prometheus was no longer accepting new funds because it had reached a "pre-established excess case ratio," referring to the ratio of potential plaintiffs to investors.  He also touted his "sincere and genuine commitment to all of our clients that everyone's investment is safe and secure."

26.     Catipay and Aldrich further misappropriated Prometheus's investor funds for their own personal use and benefit.

27.     The SEC sued Prometheus, Catipay, and Aldrich, alleging violations of federal laws including: 15 U.S.C. §§ 77e: Unregistered Offer and Sale of Securities; 15 U.S.C. § 77q(a): Fraud in the Offer or Sale of Securities; 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5: Fraud in Connection with the Purchase or Sale of Securities; and 15 U.S.C. § 78o(a)(1): Use of Mails and Interstate Commerce to Induce Sales of Unregistered Securities.  A true and correct copy of the Complaint filed in *SEC v. PLCMGMT* is attached hereto as Exhibit 2.

28.     The SEC alleged in the Complaint that "because the defendants never registered the offer or sale of the Prometheus investments, they have violated the registration provisions of Section 5 of the Securities Act, 15 U.S.C. § 77f." *See* Ex. 2 at 4:16-18.

29.     Catipay and Aldrich each entered into a stipulated judgment.  *See SEC v. PLCMGMT*, ECF No. 69 (Aldrich's Consent); *SEC v. PLCMGMT*, ECF No. 70 (Aldrich's Final Judgment); *SEC v. PLCMGMT*, ECF No. 35 (Catipay's Consent); *SEC v. PLCMGMT*, ECF No. 37 (Catipay's Final Judgment).  Aldrich consented not to deny any allegation in the Complaint.  *See SEC v. PLCMGMT*, ECF No. 69 at 5:6-10.  Aldrich also consented to the entry of a final judgment ordering him to pay disgorgement in the amount of $2,667,945.00.  *See id.* at 2:11-13.  Catipay agreed not to argue that he did not violate the federal securities laws as alleged in the

8

Complaint.  *See SEC v. PLCMGMT*, ECF No. 35 at 2:20-23.  Catipay also agreed to the entry of a final judgment ordering him to pay disgorgement of ill-gotten gains in an amount that the Court would later decide.  *See id.* at 2:12-19.

30.     In separate criminal proceedings, Catipay pleaded guilty to one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, based upon his role in an agreement between two or more persons to commit Securities Fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.lOb-5.  *See U.S. v. James Catipay*, 3:16-cr-02453-JAH (S.D. Cal.), ECF No. 6 (Plea Agreement).

31.     In separate criminal proceedings, Aldrich also pleaded guilty to one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371.  *See U.S. v. David Aldric*h, 3:16-cr-02688-JAH (S.D. Cal.), ECF No. 21 (Judgment).

32.     On April 26, 2016, this Court appointed the Receiver in the *SEC v. PLCMGMT* case and vested the Receiver with full power over all funds and assets of Prometheus and its subsidiaries and affiliates.  *See* Ex. 1 at 7-9.

33.     The Court ordered the Receiver to "take custody, control, possession, and charge of all funds, assets, collateral, premises (whether owned, leased, occupied, pledged as collateral, or otherwise controlled), choses in action, books, records, papers and other real or personal property, wherever located, of or managed by Defendant Prometheus and its subsidiaries and affiliates (collectively, the "Assets"), with full power to sue, foreclose, marshal, collect, receive, and take into possession all such property (including access to and taking custody, control, and possession of all such Defendant Prometheus, and that of its subsidiaries and affiliates)[.]"  *See* Ex. 1 at 7-8.

34.     The Court also authorized and empowered the Receiver "to choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the permanent receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order" and to "investigate and, where appropriate, to institute, pursue

COMPLAINT

and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of present of past employees or agents of Defendant Prometheus, its subsidiaries and affiliates[.]" *See* Ex. 1 at 8-9.

35.     Further, the Court also directed the Receiver to "institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts: (i) that the permanent receiver deems necessary and advisable to preserve or recover the Assets of Defendant Prometheus (including those of its subsidiaries and affiliates); or (ii) that the permanent receiver deems necessary and advisable to carry out the permanent receiver's mandate under this Order." *See* Ex. 1 at 9.

36.     On April 3, 2017, the Receiver filed a Second Status Report and Accounting, reporting findings from his investigation (with the assistance of a forensic accountant) that, *inter alia*, approximately 255 investors had invested $12,044,168.  Overall net losses totaled approximately $11.7 million.[1]  *See SEC v. PLCMGMT*, ECF No. 80 at 2:5-20.

37.     To date, nearly all the investors have lost their entire investments in Prometheus.

38.     Prometheus has been effectively insolvent since inception, as it never had any legitimate assets.

39.     The Receiver's investigation remains ongoing and his findings are thus subject to change based on further work.

**B.     DEFENDANTS' ROLES**

40.     Each Defendant named herein offered to sell and sold Prometheus's unregistered securities to investors, and otherwise promoted Prometheus's fraudulent business activities.

///

---

[1] Some investors received full redemptions, and one investor received a profit.

41.     Upon information and belief, Defendants Cantu, M. McNamara, Langenberg, K. Leiter and Givilancz also recruited others to sell Prometheus's unregistered securities, and received payments in exchange for the recruitments.

42.     Each Defendant named herein received payments transferred by Prometheus as a referral fee or commission for Defendant's sales of Prometheus's unregistered securities.

43.     Each payment made by Prometheus to each Defendant derived from the funds provided to Prometheus by its investors, rather than from funds derived from settlement payments.

44.     Each payment by Prometheus to each Defendant was made in furtherance of Prometheus's fraudulent scheme.

45.     Upon information and belief, no Defendant is registered as a broker nor as a dealer with the SEC nor with his or her state of domicile or residency.

46.     Based on the information in his or her possession and available to each Defendant, each Defendant understood that Prometheus was guaranteeing unrealistically high returns to investors over an incredibly short period of time; however, each Defendant failed to conduct adequate due diligence and ignored multiple red flags regarding the illegitimacy of Prometheus's investment offering. Each Defendant thus knew or should have known that Prometheus was a fraudulent endeavor.

47.     Upon information and belief, Defendants did not disclose to the investors whom he or she recruited that the Defendant would receive a "referral fee" or commission payment based upon that investment, nor that the "referral fee" or commission payment derived from the funds that investors were investing in Prometheus.

48.     A schedule of all of the Defendants' "referral fee" payments is set forth in Exhibit 3 attached hereto.

///

COMPLAINT

49.     Prometheus received no reasonably equivalent value or consideration for payment of the distributions to Defendants.

50.     Further facts specific to each Defendant are as follows:

### a.     Defendant Lee Samuel Allen

51.     Allen sold Prometheus securities to at least eight investors for a total amount of at least $152,500 from December 2013 – August 2014.

52.     Allen received a total of at least $16,250 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

53.     During the time he sold Prometheus securities, Allen resided in California.  The investors to whom he sold the securities resided in states including California, Georgia, Oklahoma, Utah and Virginia.

54.     Upon information and belief, Allen offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

55.     At the time of his sales, Allen had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Allen filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

56.     At the time of his sales, Allen was not a registered broker or dealer under federal securities law.

57.     The Receiver's counsel sent Allen a letter on October 7, 2016, and a second letter on December 13, 2016, demanding that Defendant return distributions received from Prometheus.

58.     As of the present date, Allen has not repaid the amounts demanded.

### b.     Defendants Peter Bauer and Alpha Matrix

59.     Bauer sold Prometheus securities to at least eight different investors for a total amount of at least $195,000 from April 2014 – August 2015.

///

COMPLAINT

60.    Bauer and/or his company Alpha Matrix received a total of at least $22,250 in commission payments from Prometheus in return for Bauer's unlawful sales of Prometheus's unregistered securities.

61.    During the time he sold Prometheus securities, Bauer resided in Colorado.  The investors to whom he sold the securities resided in states including Colorado and Utah.

62.    Upon information and belief, Bauer offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

63.    At the time of his sales, Bauer had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Bauer filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

64.    At the time of his sales, Bauer was not a registered broker or dealer under federal securities law.

65.    The Receiver's counsel sent Bauer a letter on October 5, 2016, demanding that Defendant return distributions received from Prometheus.

66.    As of the present date, Bauer has not repaid the amounts demanded.

### c.    Defendant William Baylin

67.    Baylin sold Prometheus securities to four investors for a total amount of $110,000 from April 2015 – May 2015.

68.    Baylin received a total of at least $4,500 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

69.    During the time he sold Prometheus securities, Baylin resided in California.  The investors to whom he sold the securities resided in California, North Carolina and Florida.

///

///

COMPLAINT

70.     Upon information and belief, Baylin offered to sell and sold the securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

71.     At the time of his sales, Baylin had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Baylin filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

72.     At the time of his sales, Baylin was not a registered broker or dealer under federal securities law.

73.     The Receiver's counsel sent Baylin a letter on October 17, 2016, demanding that Defendant return distributions received from Prometheus.

74.     As of the present date, Baylin has not repaid the amounts demanded

### d.     Defendant Jeffrey Brown

75.     Brown sold Prometheus securities to two investors for a total amount of $70,000 from April 2014 – May 2014.

76.     Brown received a total of at least $7,000 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

77.     During the time he sold Prometheus securities, Brown resided in Texas. The investors to whom he sold the securities resided in Texas.

78.     Upon information and belief, Brown offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

79.     At the time of his sales, Brown had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Brown filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

80.     At the time of his sales, Brown was not a registered broker or dealer under federal securities law.

COMPLAINT

81.    The Receiver's counsel sent Brown a letter on October 7, 2016, and again on December 13, 2016 demanding that Defendant return distributions received from Prometheus.

82.    As of the present date, Brown has not repaid the amounts demanded.

### e.    Defendant Anthony Cantu

83.    Cantu sold Prometheus securities to four investors in a total amount of $465,000 from December 2013 – May 2014.

84.    Cantu received a total of at least $66,750 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

85.    During the time he sold Prometheus securities, Cantu resided in Texas. The investors to whom he sold the securities resided in Minnesota and Texas.

86.    Upon information and belief, Cantu offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

87.    At the time of his sales, Cantu had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Cantu filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

88.    At the time of his sales, Cantu was not a registered broker or dealer under federal securities law.

89.    The Receiver's counsel sent Cantu a letter on October 7, 2016, demanding that Defendant return distributions received from Prometheus.

90.    As of the present date, Cantu has not repaid the amounts demanded.

### f.    Defendant Michael Givilancz

91.    Givilancz sold Prometheus securities to fifteen investors for a total amount of $2,724,500 from November 2013 – January 2016.[2]

_____

[2]   The records available to the Receiver indicate that there may be overlap between payments to Cantu and Givilancz in connection with the same wrongful acts as alleged herein.  In the event that there is overlap, a judgment is sought joint

92.   Givilancz sold Prometheus securities to the individual investor who made the largest individual investment in Prometheus ($1,770,000).

93.   Givilancz received a total of $320,250 in payments from Prometheus. Some portion of the $320,250 in payments were commission payments made in return for his unlawful sales of Prometheus's unregistered securities.

94.   Prometheus principal Catipay stated that at least $71,000 of Prometheus's payments to Givilancz were gifts to Givilancz, not commission payments.   Givilancz provided nothing to Prometheus in return for these gift payments.

95.   During the time he sold Prometheus securities, Givilancz resided in Texas.  The investors to whom he sold the securities resided in Idaho and Texas.

96.   Upon information and belief, Givilancz offered to sell and sold the securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

97.   At the time of his sales, Givilancz had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Givilancz filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

98.   At the time of his sales, Givilancz was not a registered broker or dealer under federal securities law.

99.   The Receiver's counsel sent Givilancz a letter on October 7, 2016, demanding that Defendant return distributions received from Prometheus.

100.   As of the present date, Givilancz has not repaid the amounts demanded.

**g.   Defendants Jonathan "Jay" Harris and C.J. Investment Group, LLC**

101.   Harris sold Prometheus securities to fifteen investors for a total amount of $530,000 from September 2014 – September 2015.

---

and several against each defendant as to each amount, but no double recovery is sought.

COMPLAINT

102.   Harris and/or his company C.J. Investment Group received a total of at least $26,020 in commission payments from Prometheus in return for Harris' unlawful sales of Prometheus's unregistered securities.

103.   During the time he sold Prometheus securities, Harris resided in Colorado.  The investors to whom he sold the securities resided in Colorado and Virginia.

104.   Upon information and belief, Harris offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

105.   At the time of his sales, Harris had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Harris filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

106.   At the time of his sales, Harris was not a registered broker or dealer under federal securities law.

107.   The Receiver's counsel sent Harris a letter on October 5, 2016, demanding that Defendant return distributions received from Prometheus.

108.   As of the present date, Harris has not repaid the amounts requested.

### h.      Defendant Loretta Kazmar

109.   Kazmar sold Prometheus securities to two investors for a total amount of $40,000 from June 2014 – June 2015.

110.   Kazmar received a total of at least $6,400 in commission payments from Prometheus in return for her unlawful sales of Prometheus's unregistered securities.

111.   During the time she sold Prometheus securities, Kazmar resided in California.  The investors to whom she sold the securities resided in California.

///

///

COMPLAINT

112.   Upon information and belief, Kazmar offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

113.   At the time of her sales, Kazmar had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Kazmar filed a form with the Commissioner establishing herself as a "finder" who is exempt from California's certification requirement.

114.   At the time of her sales, Kazmar was not a registered broker or dealer under federal securities law.

115.   The Receiver's counsel sent Kazmar a letter on October 5, 2016, demanding that Defendant return distributions received from Prometheus.

116.   As of the present date, Kazmar has not repaid the amounts demanded

### i.      Defendant Marc Lampert

117.   Lampert sold Prometheus securities to three investors for a total amount of $80,000 during October 2014 – January 2015.

118.   Lampert received a total of at least $4,000 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

119.   During the time he sold Prometheus securities, Lampert resided in California.  The investors to whom he sold the securities resided in California.

120.   Upon information and belief, Lampert offered to sell and sold the securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

121.   At the time of his sales, Lampert had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Lampert filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

///

COMPLAINT

122.   At the time of his sales, Lampert was not a registered broker or dealer under federal securities law.

123.   The Receiver's counsel sent Lampert a letter on October 5, 2016, demanding that Defendant return distributions received from Prometheus.

124.   As of the present date, Lampert has not repaid the amounts demanded.

### j.     Defendant Gene Langenberg

125.   Langenberg sold Prometheus securities to twenty-one investors for a total amount of $590,792 from April 2014 – December 2015.

126.   Langenberg received a total of at least $29,892 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

127.   During the time he sold Prometheus securities, Langenberg resided in California.   The investors to whom he sold the securities resided in California, Massachusetts and Nebraska.

128.   Upon information and belief, Langenberg offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

129.   At the time of his sales, Langenberg had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Langenberg filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

130.   At the time of his sales, Langenberg was not a registered broker or dealer under federal securities law.

131.   The Receiver's counsel sent Langenberg a letter on October 5, 2016, and again on December 13, 2016, demanding that Defendant return distributions received from Prometheus.

132.   As of the present date, Langenberg has not repaid the amounts demanded.

COMPLAINT

### k.      Defendant Adam Leiter

133.   A. Leiter sold Prometheus securities to forty-seven investors for a total amount of $1,199,700 from July 2015 – February 2016.

134.   A. Leiter received a total of at least $78,485 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

135.   During the time he sold Prometheus securities, A. Leitner resided in California.   The investors to whom he sold the securities resided in California, Hawaii and West Virginia.

136.   Upon information and belief, A. Leiter offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

137.   At the time of his sales, A. Leiter had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had A. Leiter filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

138.   At the time of his sales, A. Leiter was not a registered broker or dealer under federal securities law.

139.   The Receiver's counsel sent A. Leiter a letter on October 5, 2016, demanding that Defendant return distributions received from Prometheus.

140.   As of the present date, A. Leiter has not repaid the amounts demanded.

### l.      Defendant Kimberly Leiter

141.   K. Leiter sold Prometheus securities to five investors for a total amount of $270,000 from March 2015 – July 2015.

142.   K. Leiter received a total of at least $29,951 in commission payments from Prometheus in return for her unlawful sales of Prometheus's unregistered securities.

///

COMPLAINT

143.   During the time she sold Prometheus securities, K. Leiter resided in California.  The investors to whom she sold the securities resided in California.

144.   Upon information and belief, K. Leiter offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

145.   At the time of her sales, K. Leiter had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had K. Leiter filed a form with the Commissioner establishing herself as a "finder" who is exempt from California's certification requirement.

146.   At the time of her sales, K. Leiter was not a registered broker or dealer under federal securities law.

147.   The Receiver's counsel sent K. Leiter a letter on October 5, 2016, demanding that Defendant return distributions received from Prometheus.

148.   As of the present date, K. Leiter has not repaid the amounts demanded.

### m.   Defendant Michael McNamara

149.   M. McNamara sold Prometheus securities to fifteen investors for a total amount of $683,163 from December 2013 – February 2015.

150.   M. McNamara received a total of at least $73,458 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

151.   During the time he sold Prometheus securities, M. McNamara resided in Arizona.  The investors to whom he sold the securities resided in Arizona, California, Colorado, Florida, Illinois, Pennsylvania, and Nevada.

152.   Upon information and belief, M. McNamara offered to sell and sold the securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

153.   At the time of his sales, M. McNamara had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's

securities, nor had M. McNamara filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

154.   At the time of his sales, M. McNamara was not a registered broker or dealer under federal securities law.

155.   The Receiver's counsel sent M. McNamara a letter on October 7, 2016, and again on October 17, 2016 demanding that Defendant return distributions received from Prometheus.

156.   As of the present date, M. McNamara has not repaid the amounts demanded.

**n.   Defendant Daniel Moss**

157.   Moss sold Prometheus securities to ten investors for a total amount of $432,500 from May 2014 – July 2015.

158.   Moss received a total of at least $37,450 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

159.   During the time he sold Prometheus securities, Moss resided in Georgia.  The investors to whom he sold the securities resided in Alabama, Georgia, Kansas, and Tennessee.

160.   Upon information and belief, Moss offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

161.   At the time of his sales, Moss had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Moss filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

162.   At the time of his sales, Moss was not a registered broker or dealer under federal securities law.

163.   The Receiver's counsel sent Moss a letter on October 7, 2016, demanding that Defendant return distributions received from Prometheus.

COMPLAINT

164.   As of the present date, Moss has not repaid the amounts demanded,

**o.     Defendant Roxanne Ropp**

165.   Ropp sold Prometheus securities to six investors for a total amount of $325,000 from December 2013 – June 2014.

166.   Ropp received a total of at least $30,500 in commission payments from Prometheus in return for her unlawful sales of Prometheus's unregistered securities.

167.   During the time she sold Prometheus securities, Ropp resided in Texas. The investors to whom she sold the securities resided in Arizona, California, New Mexico, Puerto Rico, and Texas.

168.   Upon information and belief, Ropp offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

169.   At the time of her sales, Ropp had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Ropp filed a form with the Commissioner establishing herself as a "finder" who is exempt from California's certification requirement.

170.   At the time of her sales, Ropp was not a registered broker or dealer under federal securities law.

171.   The Receiver's counsel sent Ropp a letter on October 7, 2016, demanding that Defendant return distributions received from Prometheus.

172.   As of the present date, Ropp has not repaid the amounts demanded.

**p.     Defendant Eduardo Sommer**

173.   Sommer sold Prometheus securities to four investors for a total amount of $32,500 from February 2014 – April 2014.

174.   Sommer received a total of at least $3,250 in commission payments from Prometheus in return for his unlawful sales of Prometheus's unregistered securities.

///

COMPLAINT

175.   During the time he sold Prometheus securities, Sommer resided in Georgia.  The investors to whom he sold the securities resided in Alabama, Florida, Illinois and Michigan.

176.   Upon information and belief, Sommer offered to sell and sold the securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

177.   At the time of his sales, Sommer had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Sommer filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

178.   At the time of his sales, Sommer was not a registered broker or dealer under federal securities law.

179.   The Receiver's counsel sent Sommer a letter on October 7, 2016, and again on December 13, 2016, demanding that Defendant return distributions received from Prometheus.

180.   As of the present date, Sommer has not repaid the amounts demanded.

### q.     Defendants David Terry and Lifestage Planning, Inc.

181.   Terry sold Prometheus securities to six investors for a total amount of $149,500 from December 2013 – March 2015.

182.   Terry and/or his company Lifestage Planning, Inc. received a total of at least $16,900 in commission payments from Prometheus in return for Terry's unlawful sales of Prometheus's unregistered securities.

183.   During the time he sold Prometheus securities, Terry resided in Colorado.  The investors to whom he sold the securities resided in Connecticut and Colorado.

184.   Upon information and belief, Terry offered to sell and sold the Prometheus securities using means of transportation or communication, including email, telephone, Internet, and the mails, in interstate commerce.

COMPLAINT

185.   At the time of his sales, Terry had not secured a certificate from the California Commissioner of Business Oversight to sell Prometheus's securities, nor had Terry filed a form with the Commissioner establishing himself as a "finder" who is exempt from California's certification requirement.

186.   At the time of his sales, Terry was not a registered broker or dealer under federal securities law.

187.   The Receiver's counsel sent Terry a letter on October 7, 2016, demanding that Defendant return distributions received from Prometheus.

188.   As of the present date, Terry has not repaid the amounts demanded.

189.   As to all Defendants named herein, amounts owed stated herein are based on the most recent receivership records to date.  The Receiver reserves the right to seek additional amounts owed as may be established in discovery and at trial.

**COUNT I**
**UNIFORM VOIDABLE TRANSACTIONS ACT**
**(Cal. Civ. Code § 3439)**

190.   The Receiver repeats and realleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

191.   Prometheus was engaged in a Ponzi scheme and attempted to discourage investor redemption requests, as alleged above.

192.    A transfer made by a debtor is voidable as to a creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor.  Cal. Civ. Code § 3439.04(a)(1).  "[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent" to defraud under Cal. Civ. Code § 3439.04(a)(1), codifying the "actual fraud" theory.  *Donell v. Kowell*, 533 F.3d at 770.

193.   Prometheus's payments to each Defendant were made with the actual intent to hinder, delay, or defraud creditors and/or investors of Prometheus.  Each payment by Prometheus to each Defendant is thus a voidable transfer in violation of California's Uniform Voidable Transactions Act, Cal. Civ. Code § 3439.04(a)(l).

COMPLAINT

194.   Moreover, Prometheus did not receive a reasonably equivalent value in exchange for the transfers to Defendants.

195.   As alleged above, Prometheus's assets were unreasonably small in relation to the number of investor return transactions that were about to come due. In fact, transfers made pursuant to a Ponzi scheme generally establish that the scheme operator "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" under § 3439.04(a)(2)(A). *Donell v. Kowell*, 533 F.3d at 771.

196.   Each payment by Prometheus to each Defendant is thus a voidable transfer in violation of Cal. Civ. Code § 3439.04(a)(2)(A).

197.   In addition, as alleged above, Prometheus intended to incur, and believed and reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.  In fact, transfers made pursuant to a Ponzi scheme generally establish that the scheme operator "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due" under § 3439.04(a)(2)(B). *Donell v. Kowell*, 533 F.3d at 771.

198.   Each payment by Prometheus to each Defendant is thus a voidable transfer in violation of Cal. Civ. Code § 3439.04(a)(2)(B).

199.   No Defendant took the transfer of monies in good faith, nor for a reasonably equivalent value, pursuant to Cal. Civ. Code §§ 3439.08(a) or 3439.08(d).

200.   To the extent that any Defendant has used the distributions to obtain any real or personal property in which the Defendant now claims an interest, this Court should set aside such interests and transfer such property to the Receiver.

201.   The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each distribution from Prometheus.

COMPLAINT

1
2

## COUNT II
## <u>VIOLATION OF 15 U.S.C. §§ 77e(a), 77e(c)</u>

3    202.   The Receiver repeats and re-alleges the allegations of each and every
4    one of the prior paragraphs, inclusive, as if fully set forth herein.

5    203.   Prometheus's "prepaid forward plaintiff litigation contracts" are
6    securities.

7    204.   No registration statement was ever in effect as to Prometheus's
8    securities.

9    205.   Prometheus's   securities   were   not   exempt   from   registration
10   requirements.

11   206.   It is unlawful for any person to make use of the means or instruments
12   of transportation or communication in interstate commerce, or of the mails, to sell a
13   security unless a registration statement is in effect as to a security.   15 U.S.C.
14   § 77e(a).  It is also unlawful for a person to make use of the means or instruments of
15   transportation or communication in interstate commerce, or of the mails, to *offer* to
16   sell a security without a registration statement having been filed or being in effect.
17   *See* 15 U.S.C. § 77e(c) (emphasis added).  Intrastate use of the telephone, where the
18   telephone calls in question are connected to the transaction at issue, constitutes a
19   violation of 15 U.S.C. § 77e.  *See Spilker v. Shayne Labs., Inc.*, 520 F.2d 523, 525-
20   26 (9th Cir. 1975).  Making use of Internet services in interstate commerce to sell or
21   offer to sell a security, with no registration statement in effect as to the security,
22   constitutes a violation of 15 U.S.C. § 77e.  *See SEC v. McDuffie*, No. 12-cv-02939,
23   2014 U.S. Dist. LEXIS 128664, at *18 (D. Colo. Sept. 15, 2014); *see also SEC v.*
24   *Gagnon*, No. 10-cv-11891, 2012 U.S. Dist. LEXIS 38818, at *22-23 (E.D. Mich.
25   Mar. 22, 2012).

26   207.   As alleged above, the following Defendants offered to sell and sold
27   Prometheus's unregistered securities to persons in different states and in interstate
28   commerce: Allen, Bauer, Baylin, Cantu, Givilancz, Harris, Langenberg, A. Leiter,

M. McNamara, Moss, Ropp, Sommer, and Terry.  Upon information and belief, each of these Defendants used the mails, the telephone, email, and the Internet to offer to sell and sell Prometheus's unregistered securities.  Each of these Defendants thereby used means or instruments of transportation or communication in interstate commerce, or the mails, to offer to sell and sell securities in violation of 15 U.S.C. §§ 77e(a) and 77e(c).

208.   As alleged above, the following Defendants offered to sell and sold Prometheus's unregistered securities to persons in intrastate (California) commerce: Kazmar, Lampert, and K. Leiter.  Additionally, Defendant Brown offered to sell and sold Prometheus's unregistered securities within Texas.  Upon information and belief, each of these Defendants used the telephone and the mails to offer to sell and sell Prometheus's unregistered securities.  Each Defendant named herein thereby violated 15 U.S.C. §§ 77e(a) and 77e(c).

209.   Each Defendant accepted payments from Prometheus for his or her unlawful sales of Prometheus securities, as alleged herein.

210.   The Receiver is entitled to the rescission of each Defendant's contract with Prometheus.

211.   The Receiver is entitled to immediate repayment of all payments made by Prometheus to each Defendant in connection with Defendant's sale of Prometheus's unregistered securities.

212.    The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each distribution from Prometheus.

## COUNT III
## <u>VIOLATION OF CAL. CORP. CODE § 25110</u>

213.   The Receiver repeats and re-alleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

214.   Prometheus's "prepaid forward plaintiff litigation contracts" are securities.  *See* Cal. Corp. Code § 25019.

215.  As alleged herein, Prometheus issued its own securities for sale to investors.  Prometheus and its principals collected payments from investors in its securities, and kept a large portion of those payments.  No federal registration statement was filed for the securities, nor was any application filed with the California Commissioner of Business Oversight, nor were the securities previously qualified in any manner, nor did Prometheus provide evidence of indebtedness before the sale of its securities.  *See* Cal. Corp. Code § 25116 et. seq.

216.  Prometheus is an "issuer" under Cal. Corp. Code § 25010, and Prometheus's sales of its securities are "issuer transactions."  *See* Cal. Gov't Code § 5950 and Cal. Corp. Code § 25011.  It is unlawful for any person to offer or sell in California any security in an issuer transaction unless the sale has been qualified under Cal. Corp. Code sections 25111, 25112 or 25113 or unless the security is exempt from qualification or not subject to qualification.  Cal. Corp. Code. § 25110.  Prometheus securities were not so qualified, nor were they exempt or not subject to qualification.  *See* Cal. Corp. Code § 25116 *et. seq*.

217.  As alleged herein, the following Defendants were domiciled in California when they sold Prometheus's securities to certain purchasers who were also domiciled in California, and the Prometheus securities were delivered to the purchaser in California: Allen, Baylin, Kazmar, Lampert, Langenberg, A. Leiter, and K. Leiter.

218.  As alleged herein, the following Defendants sold Prometheus's unqualified securities to purchasers domiciled in California, and upon information and belief, the purchasers accepted the Defendant's offer in California: M. McNamara and Ropp.

219.  Any contract by which Prometheus agreed to pay any Defendant to induce or attempt to induce the purchase of Prometheus securities in violation of Cal. Corp. Code § 25210(a) is thus voidable.

///

COMPLAINT

220.   The Receiver is entitled to immediate repayment of all payments made by Prometheus to each Defendant in connection with Defendant's sale of Prometheus's unregistered securities.

221.   The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each distribution from Prometheus.

**COUNT IV**
**VIOLATION OF 15 U.S.C. § 78o**

222.   The Receiver repeats and re-alleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

223.   As alleged herein, no Defendant was registered in accordance with 15 U.S.C. § 78o(b) during any portion of the time frame during which he or she attempted to induce and induced the purchase or sale Prometheus's securities.

224.   As alleged herein, the following Defendants induced the purchase of Prometheus's securities in a state other than their own state of domicile and in interstate commerce: Allen, Bauer, Baylin, Cantu, Givilancz, Harris, Langenberg, A. Leiter, M. McNamara, Moss, Ropp, Sommer, and Terry.  Upon information and belief, each of the aforementioned Defendants used the mails, the telephone, email, and the Internet to attempt to induce and induce the purchase or sale of Prometheus's securities.

225.   As alleged herein, the following Defendants induced the purchase of Prometheus's securities by a purchaser located within their own state (California): Kazmar, Lampert, and K. Leiter.  Further, Defendant Brown induced the purchase of Prometheus's securities by a purchaser located within his own state domicile, Texas.  Upon information and belief, each of the aforementioned Defendants used the telephone, the mails, email, and the Internet to induce the purchase of Prometheus's securities, in interstate commerce.

226.   Each Defendant's sale of Prometheus securities violated 15 U.S.C. § 78o, as it is unlawful for a person who is not registered in accordance with

COMPLAINT

15 U.S.C. § 78o(b) to engage in the business of effecting transactions in securities and to use any means of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security.

227. A contract made in violation of 15 U.S.C. § 78o(b), or the performance of which involves the violation of a provision of 15 U.S.C. § 78o(b) or a regulation promulgated thereunder, shall be void as to any person made or engaged in the performance of any such contract. Any contract by which Prometheus agreed to pay any Defendant to induce or attempt to induce the purchase of Prometheus securities in violation of 15 U.S.C. § 78o(b) thus shall be void. *See* 15 U.S.C. § 78cc.

228. The Receiver is entitled to the rescission of the illegal contracts and the immediate repayment of all payments made to each Defendant by Prometheus in connection with the sale of unregistered securities in violation of 15 U.S.C. § 78o(b).

229. The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each distribution from Prometheus.

**COUNT V**
**VIOLATION OF CAL. CORP. CODE § 25210**

230. The Receiver repeats and re-alleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

231. No Defendant applied for, and no Defendant secured, a certificate from the Commissioner of Business Oversight authorizing that person to induce or attempt to induce the purchase or sale of any security in California.

232. No Defendant is a "finder" who is exempt from the provisions of Section 25210 pursuant Cal. Corp. Code § 25206.1(c)(1), because no Defendant filed any required forms with the Commissioner of Business Oversight before engaging in the activities proscribed by Cal. Corp. Code § 25206.1(a), including:

a. Advising a party to the transaction regarding the value of the securities or the advisability of investing in, purchasing, or selling the securities;

COMPLAINT

b.    Knowingly receiving compensation in connection with any offer or sale of securities unless the sale is qualified under this division or unless the security or the transaction is exempt or not otherwise subject to qualification;

c.    Making disclosures to the potential purchasers in addition to the information listed at Cal. Corp. Code § 25206.1(a)(8); and

d.    Obtaining the informed written consent of each investor disclosing the type and amount of compensation that has been or will be paid to the finder in connection with the introduction or referral and the conditions for payment of that compensation, nor any of the other information required pursuant to Cal. Corp. Code § 25206.1(e)(1), and obtaining the investor's consent to the payment of the compensation pursuant to Cal. Corp. Code § 25206.1(e)(2).

233.   The following Defendants offered to sell and sold Prometheus's securities in California, or offered to sell and sold Prometheus's securities to investors who were domiciled in California at the time of the sale: Allen, Baylin, Kazmar, Lampert, Langenberg, A. Leiter, K. Leiter, M. McNamara, and Ropp.

234.   It is unlawful for a person to effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in California unless the person has first applied for and secured a certificate from the Commissioner of Business Oversight authorizing that person to act in that capacity.   Cal. Corp. Code § 25210(a).

235.   Any contract by which Prometheus agreed to pay any Defendant listed in paragraph 233 to induce or attempt to induce the purchase of Prometheus securities in violation of Cal. Corp. Code § 25210(a), is thus voidable.

///

///

32

COMPLAINT

236.   The Receiver is entitled to immediate repayment of all payments made by Prometheus to each Defendant in connection with Defendant's sale of Prometheus's unregistered securities.

237.   The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each distribution from Prometheus.

### COUNT VI
### QUASI-CONTRACT CLAIM FOR RESTITUTION
### BASED ON UNJUST ENRICHMENT

238.   The Receiver repeats and re-alleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

239.   Upon information and belief, each Defendant entered into a contract with Prometheus that required Defendant to offer to sell and sell Prometheus's "prepaid forward plaintiff litigation contracts."  The contract required Prometheus, among other things, to pay each Defendant a commission for each sale effected by the Defendant.

240.   The contracts advanced a fraudulent Ponzi investment scheme, and were themselves procured by fraud.  The contracts are thus void and unenforceable.

241.   Prometheus received no equivalent value in exchange for any of its payments to Defendants, which were made to reward the unlicensed Defendants for their illegal sales of unregistered securities.

242.   These payments to Defendants constitute a benefit to Defendants.

243.   Each Defendant has refused to comply with the Receiver's demands to return these funds to the Receivership estate.  Defendants' retention of the payments from Prometheus comes at the expense of Receivership estate, and Defendants have unjustly retained a benefit at the Receivership estate's expense.

244.   Because of Defendants' unjust enrichment, the Receiver seeks an equitable remedy ordering that each Defendant is holding, and shall continue to hold, in constructive trust for the Receiver, the entire amount of the payments made to each Defendant by Prometheus.

COMPLAINT

245.   The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each distribution from Prometheus.

**COUNT VII**
**QUASI-CONTRACT CLAIM FOR RESTITUTION**
**AS TO MICHAEL GIVILANCZ**

246.   The Receiver repeats and re-alleges the allegations of each and every one of the prior paragraphs, inclusive, as if fully set forth herein.

247.   On information and belief, Prometheus made gift payments of at least $71,000 to Defendant Givilancz.

248.   Prometheus's gift payments to Givilancz were not made under any express contract with Givilancz.

249.   Prometheus received no equivalent value in exchange for its gift payments to Givilancz.

250.   Prometheus acquired the funds that it gifted to Givilancz through illegal sales of its unregistered securities by unlicensed sellers.

251.   Givilancz has not returned the gift payments from Prometheus to the Receiver, despite the Receiver's demand that he do so.

252.   Givilancz has been unjustly enriched by the amount of these gift payments at the expense of the victims of Prometheus, and the amount of the payments should be immediately conveyed to the Receiver.

253.   Because of Givilancz's unjust enrichment, the Receiver seeks an equitable remedy ordering that Givilancz is holding, and shall continue to hold, in constructive trust for the Receiver the entire amount of the gift payments made to him by Prometheus.

254.   The Receiver is entitled to recover prejudgment interest from Defendant Givilancz from the date of the receipt of each gift payment from Prometheus.

255.   In the alternative, should the $71,000 amount be proven to be commissions, and not a gift, then such amount is instead sought as to Givilancz under

COMPLAINT

all other prior causes of action as an additional amount falling within those causes of action.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

a.    For a judgment against each Defendant voiding the distributions made to each of them by Prometheus;

b.    For an order directing each Defendant to immediately pay an amount equaling the distributions made to that person by Prometheus, plus pre-judgment interest, post-judgment interest, attorneys' fees, and costs, to the Receiver;

c.    For an order declaring each Defendant to be holding an amount equaling the distributions made to that Defendant by Prometheus, plus pre-judgment interest, post-judgment interest, attorneys' fees, and costs, in constructive trust for the Receiver; and

d.    For such other and further relief as the Court may deem proper.

Dated:  April 14, 2017                          MCNAMARA BENJAMIN LLP


                                                      By:    /S/ Daniel M. Benjamin_____
                                                               Daniel M. Benjamin
                                                               Attorneys for the Receiver

COMPLAINT